1

2

3

4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6

7
DAEMEON REIYDELLE,

Plaintiff,

8

v.

9

J.P. MORGAN CHASE BANK, N.A.,

10

Defendant.

11

12

Case No.  12-cv-06543-JCS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; DISMISSING IN PART FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

Re: Dkt. No. 35

13

14

## I.    INTRODUCTION

15
Plaintiff Daemeon Reiydelle ("Plaintiff"), as an individual and as executor of the Estate of

16
Billie Reiydelle, brought this action against Defendant J.P. Morgan Chase, N.A. ("Defendant"). In

17
his First Amended Complaint ("FAC"), Plaintiff asserts eight causes of action arising out of loan

18
modification negotiations pertaining to a home mortgage. Presently before the Court is

19
Defendant's Motion to Dismiss the FAC ("Motion"). The parties have consented to the

20
jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was

21
held on January 24, 2014 at 9:30 a.m. For the reasons set out below, the Court GRANTS IN

22
PART and DENIES IN PART Defendant's Motion.

## II.    BACKGROUND

23

### A.    The FAC

24
In 2004, Plaintiff obtained a consumer loan to finance the purchase of residential property.

25
FAC ¶ 8. In early 2011, Plaintiff was facing financial hardship because his ailing wife required

26
constant medical care. *Id*. ¶ 9. Plaintiff contacted Defendant to discuss the possibility of

27
refinancing the loan or obtaining a hardship loan modification in April 2011. *Id*.

28

United States District Court
Northern District of California

Plaintiff had numerous communications with Defendants' representatives regarding loan modification throughout the summer of 2011. *Id*. ¶ 10. The communications were both written and oral. *Id*. Specifically, Plaintiff communicated with Courtney Prince, Justin Healy, and "Alicia." *Id*. Defendant's representatives helped Plaintiff prepare the necessary documentation to be considered for a loan modification, including a July 2011 hardship letter. *Id*. ¶¶ 11–12. As a result of these discussions, the parties agreed to a trial period loan modification plan ("TPP"). *Id*. ¶ 14. The TPP was memorialized in a written document dated October 14, 2011 and sent to Plaintiff. *Id*. ¶ 14, Ex. A. Pursuant to the TPP, Plaintiff was required to make three consecutive monthly payments of $3,157.21 each, beginning in December 2011. *Id*. ¶ 15.

After Plaintiff received the TPP, he remained in contact with Defendant's representatives. *Id*. ¶ 16. In subsequent communications, the representatives stated that (1) the plan was calculated uniquely for Plaintiff, identifying the maximum amount Plaintiff had the ability to pay in light of his financial hardship; and (2) the terms of the anticipated final loan modification might vary slightly from the TPP, but not significantly because the TPP was already calculated to take into consideration the maximum amount that Plaintiff had the ability to pay based on his then-existing financial circumstances. *Id*. ¶¶ 16–17. During one communication with "Justin Healy, Plaintiff asked whether the anticipated final loan modification would contain a balloon payment. Chase responded in the negative." *Id*. ¶ 18. Plaintiff was never notified that there would be, or could be, a balloon payment included in his loan modification. *Id*. ¶ 19.

Plaintiff made all payments in compliance with the TPP. *Id*. ¶ 20, Ex. B. Accordingly, Defendant sent Plaintiff a documented entitled "Home Affordable Loan Modification Agreement" ("Agreement") setting forth the terms of the final loan modification. *Id*. ¶ 21, Ex. C. The Agreement included a balloon payment of approximately $83,000 due at the end of the modified loan term, December 1, 2034. *Id*. ¶ 22. Plaintiff alleges that this was a substantial departure from the promised loan modification that materially altered its terms. *Id*. Plaintiff, who is 61 years old, believes that the final balloon payment will force him into foreclosure. *Id*. ¶ 26. After receiving the agreement, Plaintiff attempted to continue to make payments pursuant to the TPP, but Defendant refused to accept them. *Id*. ¶ 25. Plaintiff believes that he is left with the unconscionable choice

United States District Court
Northern District of California

between opting for foreclosure now, or when he is 83 years old. *Id*. at 27.

Based on the above, Plaintiff alleges eight causes of action, as follows:

(1)    Breach of Oral Contract/Implied Contract: Plaintiff alleges that he and Defendant entered an implied-in-fact contract whereby Defendant agreed that the terms of the Agreement would not change substantially from the terms of the TPP. *Id*. ¶ 30. Plaintiff alleges that he performed his obligations under the TPP by making the required payments. *Id*. ¶ 31. Accordingly, he alleges that Defendant received a benefit because he might not otherwise have made any payment and instead opted to default. *Id*. ¶ 32. Defendant breached the contract by including a balloon payment in the Agreement, which substantially altered the terms of the TPP by increasing the certainty of foreclosure in the future, causing Plaintiff damages. *Id*. ¶¶ 33–34.

(2)    Breach of the Covenant of Good Faith and Fair Dealing: Defendant breached the covenant of good faith and fair dealing by, among other things, (1) assuring Plaintiff that the Agreement would not include a balloon payment; (2) representing that the terms of the Agreement would vary only slightly from the TPP; (3) accepting payments pursuant to the TPP when it knew or should have known that the Agreement would require inclusion of a balloon payment; (4) inducing Plaintiff to believe that each statement it made was true; and (5) including a $83,000 balloon payment at the end of the loan term that will cast Plaintiff into foreclosure and deprive Plaintiff of the benefits of the Agreement. *Id*. ¶¶ 37–38. Plaintiff has suffered damages as a result of Defendant's abuse of its discretionary power. *Id*. ¶¶ 38–39.

(3)    Promissory Estoppel: Defendant's representatives, including Courtney Prince, Justin Healy, and Alicia, assured Plaintiff that the terms of the Agreement would not substantially differ from those set forth in the TPP. *Id*. ¶ 41. In completing the TPP and making the payments required by the TPP, Plaintiff justifiably relied on Defendant's assurances. *Id*. ¶ 42. Notably, Plaintiff directly inquired about the inclusion of a balloon payment. *Id*. Defendant should have reasonably expected that Plaintiff would rely on its assurances. *Id*. ¶ 43. The Agreement materially and substantially differs from the TPP. *Id*. ¶ 41. As a result, Plaintiff has incurred damages. *Id*. ¶ 44.

(4)    Specific Performance: The terms and conditions of the Agreement, without the

3

inclusion of the balloon payment, are just and reasonable as to Defendant and the parties' obligations are supported by adequate consideration. *Id*. ¶ 46. Plaintiff performed under the TPP and all conditions precedent to Defendant's performance have occurred. *Id*. ¶ 47. Plaintiff has no adequate remedy at law. *Id*. ¶ 48. Accordingly, Plaintiff is entitled to a judicial decree commanding Defendant to perform its obligations under the Agreement, that is to provide Plaintiff with a loan modification without a balloon payment. *Id*. ¶ 49.

(5)    Intentional Misrepresentation/Concealment: Defendant, through its representatives Courtney Prince, Justin Healy, and Alicia, intentionally misrepresented that the Agreement would not substantially differ from the TPP and either intentionally misrepresented or concealed that the Agreement would contain a balloon payment. *Id*. ¶ 51. On information and belief, Plaintiff alleges that Defendant's conduct is part of a pattern and practice to deceive borrowers such as Plaintiff into relying to their detriment that compliance with the TPP will result in loan modification with substantially similar terms. *Id*. ¶ 52. Defendant knew of the falsity of its misrepresentations or its omissions and/or entered into the TPP without the intention to comply with it. *Id*. ¶ 53. Defendant intended to induce Plaintiff's reliance, and Plaintiff justifiably relied. *Id*. ¶¶ 54–55. As a result, Plaintiff suffered damages. *Id*. ¶ 56.

(6)    Declaratory Relief: Plaintiff seeks a declaration concerning the parties' legal obligations to resolve their dispute concerning the agreed upon terms of the Agreement. *Id*. ¶¶ 59, 62.

(7)    Negligence: Defendant agreed to assist Plaintiff with a loan modification while Plaintiff was facing financial difficulties stemming from the unexpected medical expenses incurred by his ailing wife. *Id*. ¶ 64. Defendant was aware of that hardship when it prepared the Agreement having analyzed Plaintiff's income, assets, debts, and liabilities in conjunction with determining the monthly payment figure pursuant to the TPP. *Id*. ¶ 65. The balloon payment will force Plaintiff into foreclosure in 2034. *Id*. ¶ 66. Defendant owed Plaintiff a duty of care to disclose all material terms of the Agreement to Plaintiff when Plaintiff entered the TPP. *Id*. ¶ 67. Defendant breached that duty by concealing the balloon payment, inducing Plaintiff to enter the TPP. *Id*. ¶ 68. Defendant caused Plaintiff's injury because Plaintiff would not have otherwise

United States District Court
Northern District of California

4

1  entered the TPP. *Id.* ¶ 69. Plaintiff suffered damages because he was unaware of the balloon

2  payment and will be forced into foreclosure when the payment comes due. *Id.* ¶ 70.

3      (8)    Reformation: Defendant knew that the Agreement would contain a balloon

4  payment, but nevertheless represented that it would not through its representatives. *Id.* ¶¶ 72–73.

5  Defendant made these misrepresentations to induce Plaintiff to accept the Agreement. *Id.* ¶ 74.

6  Plaintiff reasonably relied on the assertions as they were made by Defendant's authorized

7  representatives. *Id.* ¶ 75.

8      **B.**    **The TPP and the Agreement**

9      Plaintiff attaches page one of the TPP to his FAC as Exhibit A. Page one contains, in

10  relevant parts, the following language:

11      Congratulations! You are approved to enter into a trial period plan
12      under the Home Affordable Mortgage Program. This is the first step
13      toward qualifying for more affordable mortgage payments. Please
    read this letter so that you understand all the steps you need to take
14      to modify your mortgage payments.

15      What you need to do …
    To accept this offer, you must make your first monthly "trial period
16      payment" in place of your normal monthly mortgage payment.
    Thereafter, send in your monthly trial period payments … as
17      follows: …

18      After all trial period payments are timely made and you continue to
    meet all program eligibility requirements, your mortgage would then
19      be permanently modified. You will be required to execute a
20      permanent mortgage modification agreement that we will send you
    before your modification becomes effective. Until then, your
21      existing loan and loan requirements remain in effect and unchanged
    during the trial period. **If each trial payment is not received by us**
22      **in the month in which it is due, this offer will end, your loan will**
    **not be modified under the Making Home Affordable program,**
23      **and you may lose eligibility for any modification programs.**

24  FAC, Ex. A. Defendant supplies pages two through five of the TPP.[1] Pages two and three ("the

25

26  _____

[1] As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6)
27  motion." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250
F.3d 668, 688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the complaint
"necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and
28  (3) no party questions the authenticity of the document." *Id.* at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th
Cir. 2006)). The FAC refers to the TPP and the terms of the TPP are central to a number of Plaintiff's claims. No

FAQ") contain answers to several frequently asked questions. In relevant part, the FAQ reads:

**Q.      What else should I know about this offer?**
●      If you make your new trial payments timely, **we will not conduct a foreclosure sale.**
…
●      If your loan is modified, we will waive all unpaid late charges.
**…**
**Q.      Why is there a trial period?**
The trial period offers you immediate payment relief (and could prevent a foreclosure sale). It also gives you time to make sure you can manage the lower monthly payment. Note: This is only a temporary Trial Period Plan. Your existing loan and loan requirements remain in effect and unchanged during the trial period.
**Q.      How was my new payment in the trial period determined?**
Your trial period payment is approximately 31% of your total gross monthly income. During your trial period the interest rate on your loan will remain unchanged. If we were able to permanently modify your loan today, we estimate your initial modified interest rate would be 2.000%. Your final modified interest rate may be different due to a variety of factors.
…
**Q.      When will I know if my loan can be modified permanently and how will the modified loan balance be determined?**
Once we confirm you are still eligible for a Home Affordable Modification and you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment as that is determined based on your total monthly gross income, not your loan balance.
…
**Q.      Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**
Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage **unless** your initial modified interest rate is below current market

party questions the authenticity of pages two through five of the TPP. The first page, which is attached to the FAC, explicitly references the content of the following pages and is numbered "Page 1 of 5," the remaining pages have the referenced content and are numbered "Page 2 of 5" through "Page 5 of 5." The Court will consider the portions of the TPP that were not attached to the FAC in ruling on this Rule 12(b)(6) Motion.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

> interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey® Rate for 30-year, fixed-rate conforming mortgages). Once your interest rate reaches the cape it will be fixed for the remaining life of your loan. Your new monthly payment will also include an escrow for property taxes, hazard insurance, and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment, or other escrowed expenses increases, your monthly payment will increase as well.
> …

Decl. of Stephanie L. Spruill in Supp. of Def.'s Mot. to Dismiss ("Spruill Decl."), Ex. A. Pages four and five fall under the heading "Additional Trial Period Plan Information and Legal Notices." *Id*. They read, in part, as follows:

> The terms of your trial period plan are effective on the day you make your first trial period     payment, provided you have paid it on or before December 01, 2011. You and we agree that:
>
> **We will not proceed to foreclosure sale during the trial period, provided you are complying with the trial period plan, except as detailed below:**
> …
> **If your monthly payment did not include escrows for taxes and insurance, you will be required to do so once your loan is permanently modified:**
> …
> **Your current loan documents remain in effect; however, you should make the trial period payment instead of the payment required under your loan documents:**
> …

*Id.*

Plaintiff attached a copy of the Agreement to his FAC. FAC, Ex. C. In an accompanying cover letter, Defendant stated that, to accept, Plaintiff was to complete and return the enclosed agreement by February 28, 2012 while continuing to make any trial period payments on time. *Id*. The relevant terms set forth in the Agreement are as follows: (1) the new principal balance would be $523,151.62; (2) the maturity date would be December 1, 2034; (3) the interest rate on the new principal balance would be 2% as of March 1, 2012; (4) the monthly principal and interest payment amount beginning on March 1, 2012 would be $2,178.44; (5) the estimated monthly

7

escrow payment would be $977.11, although that payment may adjust periodically; (6) on March 1, 2017 the interest rate would increase to 3%, increasing the monthly principal and interest payment to $2,394.01; (7) on March 1, 2018, the interest rate would increase to 3.875% for the remainder of the loan term, increasing the monthly principal and interest payment to $2,583.82; and (8) a final balloon payment of $83,072.08 would be due on December 1, 2034 unless earlier paid. *Id*. The Court notes that although Plaintiff refers repeatedly to "the Agreement" as an executed contract, it is clear from the record that Plaintiff never accepted the offer of the Agreement. *See* Opp'n at 10.

### C.     The Motion to Dismiss

Defendant contends that Plaintiff cannot state a claim for breach of the TPP because (1) Plaintiff acknowledges that he understood the terms of the final modification might vary from those of the TPP; (2) the TPP never states that any permanent modification would be identical to the TPP; (3) the TPP clearly provides that it was not a permanent modification; and (4) Defendant offered Plaintiff a loan modification pursuant to the TPP, which Plaintiff rejected. Motion at 3–4. Further, Defendant argues that it cannot be liable for a breach of the implied covenant of good faith and fair dealing, predicated on the TPP, because the TPP merely made Plaintiff eligible for a loan modification, which Defendant offered and Plaintiff rejected. *Id*. at 4–5. Defendant emphasizes that it was under no obligation to modify Plaintiff's loan in the first place. *Id*. at 5 (citing *Nungaray v. Litton Loan Serv'g*, 200 Cal.App.4th 1499, 1504–05, 135 Cal.Rptr.3d 1499 (2011)). Defendant also argues that Plaintiff cannot assert a claim for specific performance because (1) he cannot allege a breach of contract; and (2) he failed to perform under the initial loan agreement. *Id*. at 6. Defendant contends that Plaintiff has not stated a claim for reformation of the Agreement because the parties never entered a modification contract. *Id*. at 9–10.

Turning to the promissory estoppel claim, Defendant asserts (1) that it only promised Plaintiff evaluation for permanent modification; (2) that Plaintiff could not reasonably and foreseeably rely on any purported promises as to the final modification terms knowing that those terms could differ from those of the TPP and that Defendant was under no duty to modify the loan; and (3) that Plaintiff has not suffered any damages because he was already obligated to make

8

1   payments under the loan. *Id.* at 5–6.

2       Defendant argues that Plaintiff's intentional misrepresentation claim fails because it is not

3   pled with the requisite specificity under Rule 9(b) and because the terms of the TPP directly

4   contradict the purported misrepresentations. *Id.* at 7. Moreover, Defendant contends that Plaintiff

5   did not suffer any damages, but rather benefitted from lower monthly payments during the term of

6   the TPP. *Id.*

7       Regarding the negligence claim, Defendant contends (1) that it did not owe Plaintiff any

8   duty of care; (2) that it did not breach any duty even if there were one because the TPP clearly

9   demonstrates that it is only an initial step in the modification process; and (3) Plaintiff cannot

10  allege damages for the same reasons as Plaintiff cannot allege damages stemming from any

11  purported intentional misrepresentation. *Id.* at 8–9.

12      Finally, Defendant argues that the declaratory relief is a remedy that fails to the extent that

13  the underlying claims fail. *Id.* at 7–8. Because Plaintiff is not entitled to relief on any independent

14  claims, Defendant asserts that the declaratory relief cause of action also fails. *Id.*

15      **D.      Opposition**

16      Plaintiff summarizes his theory as follows: (1) as a result of a series of communications

17  Plaintiff enrolled in the TPP; (2) pursuant to those communications, Defendant promised to

18  permanently modify Plaintiff's loan on terms not substantially differing from the TPP if Plaintiff

19  completed the TPP. Opp'n to Def.'s Mot. to Dismiss the FAC ("Opp'n"), 1–2. The Agreement

20  substantially differed from the TPP as a result of the final balloon payment. *Id.* at 2.

21      Plaintiff contends that the TPP is an enforceable contract. *Id.* at 3–4 (citing *Ansanelli v. JP*

22  *Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011);

23  *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872, 153 Cal.Rptr.3d 546 (2013); *West v.*

24  *JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 154 Cal.Rptr.3d 285 (2013)). Plaintiff argues

25  that, in light of Defendant's assurances, Defendant promised in the TPP not to include a final

26  balloon payment, or anything else that substantially differed from the TPP. *Id.* at 4. Plaintiff

27  argues that Defendant breached the TPP by including a balloon payment in the Agreement. *Id.*

28  Plaintiff asserts that he is entitled to specific performance of the TPP because he is threatened with

United States District Court
Northern District of California

9

the loss of his home. *Id.* at 6. Moreover, Plaintiff contends that the inclusion of the balloon payment interferes with Plaintiff's right to receive the benefit of the contract in breach of the covenant of good faith and fair dealing. *Id.* at 5.

Addressing the promissory estoppel claim, Plaintiff contends that Defendant unambiguously promised Plaintiff that there would be no final balloon payment. *Id.* Plaintiff reasonably and justifiably relied by making payments under the TPP and continuing to forbear other obligations on the basis of his belief that he was speaking with a Defendant's representatives who had authority to bind Defendant. *Id.* at 5–6. Plaintiff suffered harm because the final balloon payment will force him into foreclosure. *Id.* at 6.

Plaintiff argues that he has stated a claim for intentional misrepresentation based on the statement of Justin Healy, who stated that the Agreement would not contain a balloon payment, and other representatives who are identified by name and confirmed that the terms of the final loan modification would not differ substantially from the TPP. *Id.* at 7. Further, Plaintiff contends that the TPP supports his argument that Defendant concealed the existence of a balloon payment as no reference to a final balloon payment is made in the document. *Id.* at 8.

Regarding the negligence claim, Plaintiff asserts that Defendant owed him a duty of care. *Id.* at 8–9 (citing *Jolley*, 213 Cal.App.4th 872, 153 Cal.Rptr.3d 546). Further, Plaintiff states that Defendant breached that duty by inserting the balloon payment in the agreement, causing him to suffer damage. *Id.* at 9.

Plaintiff contends that he is entitled to reform the Agreement to reflect the true terms of the agreement even though he concedes that he never signed the Agreement because it differed from the terms that had been represented. *Id.* at 10. At a minimum, Plaintiff asserts that the reformation cause of action creates an issue of triable fact as to whether the contract can be reformed to reflect the parties' intent. *Id.*

Finally, Plaintiff asserts that he has stated a claim for declaratory relief because his other claims are sufficiently pled. *Id.* at 8.

**E.     Reply**

Defendant argues that Plaintiff's breach of contract theory is flawed because he believes he

United States District Court
Northern District of California

10

1   should be entitled to a lower monthly payment, the same loan duration, no increase in the

2   outstanding balance of the loan, and no balloon payment. Reply in Support of Motion to Dismiss

3   the FAC ("Reply"), 2–3. Defendant points out that language in the TPP indicates that the loan

4   balance may increase as a result of the modification. *Id*. at 2.

5          Next, Defendant contends that *Jolley*, *Ansanelli*, and *West* are distinguishable. First,

6   Defendant distinguishes *Jolley* on the bases that (1) the plaintiff in *Jolley* relied on the defendant's

7   frequent assurances by borrowing money from friends and family; and (2) the defendant in *Jolley*

8   never offered a loan modification, whereas here Defendant offered a modification and Plaintiff

9   rejected it. *Id*. at 3–4. Second, Defendant distinguishes *Ansanelli* on the bases that (1) as with

10  *Jolley*, the plaintiffs in *Ansanelli* was never offered a loan modification; and (2) the plaintiffs in

11  *Ansanelli* were not provided a copy of the TPP, whereas here the TPP was provided to Plaintiff

12  and demonstrated that the terms of the modification would not be disclosed until he had made

13  payments under it. *Id*. at 4. Third, Defendant distinguishes *West* on the basis that it offered a

14  permanent loan modification, exactly what the defendant in *West* failed to do. *Id*. at 4–5.

15  Defendant asserts that the TPP was merely an agreement to later agree. *Id*. at 4 (citing *Ehlert v.*

16  *America's Serv'g Co.*, No. 11CV1359 JLS (BLM), 2011 WL 4862426 (S.D. Cal. Oct. 12, 2011)).

17          Finally, Defendant argues that Plaintiff cannot allege damages arising out of any breach of

18  contract because he was under a preexisting duty to make payments on his loan. *Id*. at 5.

19          Defendant also reiterates its position as to Plaintiff's remaining causes of action. *Id*. at 5–8.

20  **III.    ANALYSIS**

21          **A.    Legal Standard**

22                  **1.    Rule 12(b)(6)**

23          A complaint may be dismissed for failure to state a claim for which relief can be granted

24  under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The

25  purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

26  complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a

27  plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil

28  Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short

*United States District Court*
*Northern District of California*

11

United States District Court
Northern District of California

1   and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

2       In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

3   "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

4   moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal

5   may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

6   valid theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). A complaint

7   must "contain either direct or inferential allegations respecting all the material elements necessary

8   to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 562

9   (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)). "A

10  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

11  of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at

12  555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

13  enhancement.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

14      The factual allegations must be definite enough to "raise a right to relief above the

15  speculative level." *Twombly,* 550 U.S. at 555. However, a complaint does not need detailed factual

16  allegations to survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a

17  claim that is "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual

18  allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 545 (noting

19  that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings

20  demonstrate that "the pleader is entitled to relief").

21      The Ninth Circuit has "repeatedly held that a district court should grant leave to amend

22  even if no request to amend the pleading was made, unless it determines that the pleading could

23  not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th

24  Cir. 2000) (citations and internal quotation marks omitted).

25          **2.      Rule 9(b)**

26      Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or

27  mistake, a party must state with particularity the circumstances constituting fraud or mistake."

28  Fed. R. Civ. P. 9(b). A court may dismiss a claim grounded in fraud when its allegations fail to

12

satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The plaintiff must include "the who, what, when, where, and how" of the fraud. *Id*. at 1106 (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must be "specific enough to give defendants notice of the particular conduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### B.    Breach of Oral/Implied Contract and Breach of the Implied Covenant

Plaintiff asserts, and Defendant does not seriously dispute, that the TPP is an enforceable contract between the parties. *See* Opp'n, 3–4 (arguing that the TPP is an enforceable contract); Mot., 3–4 (arguing that Defendant did not breach TPP); Reply, 2–3 (same). The dispute focuses on whether Defendant was required by the TPP to grant Plaintiff a loan modification and whether Defendant breached that obligation by including a $83,000 balloon payment at the end of the loan term. But the "Breach of Oral/Implied Contract" cause of action is predicated entirely on unspecified oral and written communications. FAC ¶¶ 30–34. For the reasons discussed below, the Court dismisses that cause of action with leave to amend to allege a breach of the TPP. On the other hand, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing relies on both the TPP and the Agreement as the underlying contractual basis. *Id*. ¶ 36. As discussed below, Plaintiff has stated a claim, at the pleading stage, to the extent this cause of action relies on the TPP.

### 1.    Background Law

Under California law, "[a] contract is either express or implied." *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171, 1178, 134 Cal.Rptr.3d 779, 266 P.3d 287 (2011) (citing Cal. Civ. Code § 1619). "The existence and terms of an express contract are stated in words." *Id*. (citing Cal. Civ. Code § 1620). "The existence and terms of an implied contract are manifested by conduct." *Id*. (citing Cal. Civ. Code § 1621). "The distinction reflects no difference in legal effect but merely in the mode of manifesting assent." *Id*. "Accordingly, a

contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Id.* (internal quotation and citation omitted). The elements of a cause of action for breach of an express or breach of an implied contract are the same. *See Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 525, 93 Cal.Rptr.3d 388 (2009).

The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001). Resolving a split within the circuit, the Ninth Circuit found that a TPP entered into pursuant to the Home Affordable Mortgage Program ("HAMP") may create an enforceable contract for an offer of a loan modification. *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883 (9th Cir. 2013) ("The more natural and fair interpretation of the TPP is that the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain."). *See also Sutcliffe v. Wells Fargo, N.A.*, 283 F.R.D. 533, 549–53 (N.D. Cal. 2012) (citing *Wigod v. Wells Fargo Bank*, 673 F.3d 547 (7th Cir. 2012)) (in ruling on motion to dismiss, finding that TPP entered into pursuant to HAMP could create an enforceable contract for loan modification); *West*, 214 Cal.App.4th at 798, 154 Cal.Rptr.3d 285 (quoting *Wigod*, 673 F.3d at 565) (TPP entered into pursuant to HAMP contractually obligated lender "to offer *some* sort of good-faith permanent modification to [the borrower] consistent with HAMP guidelines") (emphasis in original).

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal.App.2d 405, 417, 5 Cal.Rptr. 367 (1960). A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55, 122 Cal.Rptr.2d 267 (2002) ("every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of either party to receive the fruits of the contract"). An implied

14

covenant of good faith and fair dealing cannot contradict the express terms of a contract. *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992)). Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 805, 71 Cal.Rptr.3d 885 (2008).

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App.4th 1, 5, 58 Cal.Rptr.3d 54 (2007). Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated. *See Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1154 (E.D. Cal. 2010).

A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Barrous v. BP P.L.C.*, No. 10–CV–2944–LHK, 2010 WL 4024774, at *4 (N.D. Cal. Oct. 13, 2010). By contrast, what the parties intended by an ambiguous contract is a factual determination. *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991). Thus, "[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986). *See also Trustees of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 777 (9th Cir. 2009)).

### 2.   Application to Facts

#### a.   Whether the TPP is an Enforceable Contract

As noted above, there is no serious dispute as to whether the TPP created an enforceable contract. Rather, the dispute focuses on the terms of the TPP. Nevertheless, the Court notes that Plaintiff has sufficiently pled, at the pleading stage, that the TPP is an enforceable contract.

#### i.   Mutual Assent

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree on the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208, 45

United States District Court
Northern District of California

1   Cal.Rptr.3d 692 (2006) (quoting Cal. Civ. Code §§ 1580, 1550, 1565). Defendant cites, without

2   providing supporting argument, several cases in which courts held that the TPP did not create an

3   enforceable contract. Motion, 3 (citing *Lucia v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 1059,

4   1066-68 (N.D. Cal. 2011) (no binding contract because the plaintiff never received a fully

5   executed copy of a modification agreement); *Nungaray*, 200 Cal.App.4th at 1504–05, 135

6   Cal.Rptr.3d 442 (judgment that there was no contract for loan modification under the TPP,

7   apparently based on the fact that the borrowers had not complied with the terms of the TPP by

8   failing to provide required financial information)).

9           In *Corvello*, the Ninth Circuit reversed the district court's finding that a TPP did not

10  amount to a contract to provide a loan modification. The district court had found that there was no

11  contract by relying on a paragraph of the TPP, which stated that the loan would not be modified

12  "unless and until" the borrower received a "fully executed copy of a Modification Agreement."

13  *Corvello*, 728 F.3d at 882. The Ninth Circuit disagreed and held that that paragraph "cannot

14  convert a purported agreement setting forth clear obligations into a decision left to the unfettered

15  discretion of the loan servicer. The more natural and fair interpretation of the TPP is that the

16  servicer must send a signed Modification Agreement offering to modify the loan once borrowers

17  meet their end of the bargain." *Id.* at 883.

18          The Ninth Circuit's reasoning accords with *Sutcliffe*, wherein this Court found that the

19  plaintiffs had sufficiently alleged mutual assent based on a TPP. *Sutcliffe*, 283 F.R.D. at 550–52

20  (citing *Gaudin v. Saxon Mortg. Servs., Inc.*, No. C 11–1663 RS, 2011 WL 5825144, at *4 (N.D.

21  Cal. Nov. 17, 2011) (TPP language provided: "Loan documents will not be modified and the Plan

22  will terminate" if, among other things, the lender does not provide a "fully executed copy of this

23  Plan and the Modification Agreement;" holding, at the pleading stage, that language did not

24  permit determination as matter of law that lender has unbridled discretion as to whether or not it

25  will provide a modification agreement upon satisfaction of all other conditions of TPP); *Wigod*,

26  673 F.3d at 563).

27          Here, the contract provides that, to enter the TPP, Plaintiff need only tender the first

28  payment. Spruill Decl., Ex. A. A permanent loan modification will be available as follows: "After

United States District Court
Northern District of California

1   all trial period payments are timely made and you continue to meet all program eligibility

2   requirements, your mortgage would then be permanently modified. You will be required to

3   execute a permanent mortgage modification agreement that we will send you before your

4   modification becomes effective." *Id.* The TPP further explains: "Once we confirm you are still

5   eligible for a Home Affordable Modification and you make all of your trial payments on time, we

6   will send you a modification agreement detailing the terms of the modified loan." *Id.* Defendant

7   does not dispute that Plaintiff made all payments and remained eligible for a modification, but

8   states that it complied with the TPP by offering Plaintiff a permanent modification. Reply at 2. On

9   this record, at the pleading stage, the Court concludes that Plaintiff has adequately pled that,

10  pursuant to the TPP, the parties agreed that Plaintiff would be entitled to a loan modification if

11  Plaintiff timely made his trial period payments and remained eligible for the program.

12                              **ii.      Sufficiently Definite Terms**

13          "Under California law, a contract will be enforced if it is sufficiently definite . . . for the

14  court to ascertain the parties' obligations and to determine whether those obligations have been

15  performed or breached." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal.App.4th 613, 623, 2 Cal.Rptr.2d

16  288 (1991). Conversely, a contract is void and unenforceable where a contract is so uncertain and

17  indefinite that the intention of the parties on material questions cannot be ascertained. *Ladas v.*

18  *California State Auto. Ass'n*, 19 Cal.App.4th 761, 770, 23 Cal.Rptr.2d 810 (1993).  Typically,

19  where a contract involves a loan it should include the identity of the lender and borrower, the

20  amount of the loan, and the terms for repayment in order to be sufficiently definite. *Peterson*

21  *Development Co. v. Torrey Pines Bank*, 233 Cal.App.3d 103, 115, 284 Cal.Rptr. 367 (1991). The

22  California Supreme Court has cautioned, however, that the destruction of contracts on the basis of

23  indefiniteness is disfavored and therefore, courts should, if feasible, "construe agreements as to

24  carry into effect the reasonable intentions of the parties if [they] can be ascertained." *Patel v.*

25  *Liebermensch*, 45 Cal.4th 344, 349, 86 Cal.Rptr.3d 366, 197 P.3d 177 (2008) (citations omitted).

26          In *Wigod*, the Seventh Circuit explained that, while the TPP did not set forth the terms of

27  repayment, it did require the lender to offer a modification that was consistent with the HAMP

28  guidelines and therefore did not give the lender unlimited discretion as to the repayment terms.

17

*Wigod*, 673 F.3d at 565. Therefore, the *Wigod* court concluded that the TPP was sufficiently definite for a contract to exist. *Id*. This Court also found *Wigod*'s reasoning persuasive in *Sutcliffe*, concluding that because the lender was required to comply with the HAMP guidelines in determining the terms of repayment under a modification agreement, the terms of the TPP were sufficiently definite to survive a motion to dismiss. *Sutcliffe*, 283 F.R.D. at 552. A California Court of Appeal also adopted the reasoning in *Wigod* when it concluded that HAMP likewise constrained Chase's discretion. *West*, 214 Cal.App.4th at 796-98, 154 Cal.Rptr.3d 285. The Ninth Circuit also impliedly agreed with this reasoning when it generally adopted the reasoning and holding in *Wigod*. *See Corvello*, 728 F.3d at 883. Here, the TPP states that it is a trial period plan under HAMP. Spruill Decl., Ex. A. Moreover, Defendant has made no argument that the terms of the TPP are not sufficiently definite to create an enforceable contract. Accordingly, the Court finds that the terms of the TPP are sufficiently definite.

### iii.    Consideration

Under California law, "good consideration" to support a contract is defined as follows:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605. Doing or promising to do what one is already legally bound to do cannot be consideration for a promise. *Witkin, Summary of Califorina Law* 10th (2005) Contracts § 218. On the other hand, "[u]nder California law, consideration exists even if the performance due 'consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire. It is enough that some small additional performance is bargained for and given . . . . [It is sufficient] if the act or forebearance given or promised as consideration differs in any way from what was previously due." *Ansanelli*, 2011 WL 1134451, at *4 (quoting *House v. Lala*, 214 Cal.App.2d 238, 243, 29 Cal.Rptr. 450 (1963)).

In *Ansanelli*, the court held that additional time spent preparing disclosures that were required under the trial payment plan, but not under the original loan, was adequate consideration

18

to support the existence of a contract. *Id*. Likewise, the Seventh Circuit in *Wigod* found that the TPP was supported by consideration because the borrower agreed to "open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information." *Wigod*, 673 F.3d at 564. Relying on those cases, this Court found the plaintiffs' allegations in *Sutcliffe* sufficient to survive dismissal where they were required to submit additional financial documents that were not required under the original term of the loan. *Sutcliffe*, 283 F.R.D. at 553. The court also noted that the plaintiffs agreed to go to credit counseling if asked. *Id*. While the Ninth Circuit in *Corvello* did not expressly discuss the issue of consideration, it impliedly held that plaintiffs' compliance with their trial plans and completions of the required payments under the TPP constituted sufficient consideration. *See Corvello*, 728 F.3d at 881.

Defendant makes no argument that there was insufficient consideration to support the TPP. In addition, Plaintiff agreed to attend credit counseling if asked pursuant to the TPP. Spruill Decl., Ex. A. Accordingly, the Court does not dismiss Plaintiff's claims predicated on the TPP for lack of consideration.

### b.   Whether the Agreement is an Enforceable Contract

On the facts alleged, the Agreement is not an enforceable contract. In the Agreement, pursuant to the TPP, Defendant offered Plaintiff a loan modification. The FAC itself does not allege whether or not Plaintiff took any action to accept the agreement. Rather, it alleges only that after Defendant sent the Agreement he attempted to tender the payments required under the TPP. FAC ¶ 25. The Opposition clarifies that Plaintiff refused to sign the Agreement because he objected to the balloon payment at the end of the loan term. Opp'n at 10. Because Plaintiff has not alleged that he accepted the Agreement, he has not alleged that it is an enforceable contract.

### c.   Whether there is Any Other Contract Regarding Modification

Plaintiff alleges that the "written and oral representations and communications between Plaintiff and Chase constitute an implied-in-fact contract whereby Chase agreed that the terms of the Agreement would not change substantially from the terms of the loan under the TPP." FAC ¶ 30. It is unclear how, or when, this putative contract was allegedly formed. Plaintiff alleges that, at unspecified times, Defendant's representatives stated that the terms of the Agreement (1) would

not substantially differ from those of the TPP; and (2) would not include a balloon payment.

First, assuming the representations were made after the parties entered the TPP, Plaintiff has not alleged that he provided any consideration for the additional promises. *See Ansanelli*, 2011 WL 1134451, at *3–*4. In *Ansanelli*, the court held that an oral TPP can fall within an exception to the statute of frauds and create an enforceable contractual promise where (1) there was an existing written contract; (2) the oral TPP was a modification to that written agreement; (3) the oral TPP was supported by new consideration; and (4) the promisee tenders full performance. *Id.* at *3–*4 (citing Cal. Civ. Code § 1698; *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal.3d 665, 673, 111 Cal.Rptr. 693, 517 P.2d 1157 (1974)). Here, because Plaintiff has not alleged new consideration, Defendant's oral promises did not create a binding contract modification on the facts alleged, nor did they create an independent contract.

Second, even assuming the representations were made before the parties entered the TPP, Plaintiff still has not alleged that they provided consideration for those promises. The additional consideration that they have alleged was provided in connection with the TPP. Whether or not Plaintiff later attempts to argue that these oral representations should be considered in interpreting the TPP, he has not alleged sufficient facts from which the Court can conclude that there was a separate oral contract between the parties.

Third, the facts alleged do not provide the basis for any implied contract. Plaintiff's allegations regarding the terms of the contract rely entirely on oral and written representations made by Defendant, not on the conduct between the parties.

### d.   Breach of the Covenant of Good Faith and Fair Dealing

### i.   The TPP

As noted above, the dispute between the parties focuses on whether the inclusion of an $83,000 balloon payment at the end of the loan term is a breach of the TPP. As discussed below, Plaintiffs have sufficiently pled a breach of the TPP premised on a breach of the covenant of good faith and fair dealing.

"The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised

United States District Court
Northern District of California

in good faith." *Carma*, 2 Cal.4th at 372, 6 Cal.Rptr.2d 467, 826 P.2d 710; *see Perdue v. Crocker Nat'l Bank*, 38 Cal.3d 913, 923, 216 Cal.Rptr. 345, 702 P.2d 503 (1985) ("Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing") (internal quotations omitted). "The exercise of discretionary powers is exercised under the implied covenant to assure that the promises of the contract are effective and in accordance with the parties' legitimate expectations." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1086 (N.D. Cal. 2012) (quoting *McNeary-Calloway*, 863 F.Supp.2d at 956-57). *See Carma*, 2 Cal.4th at 373–74, 6 Cal.Rptr.d 467, 826 P.2d 710; *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 WL 111223, at *8 (N.D. Cal. Jan. 9, 2008); *Schwarzkopf v. Int'l Bus. Machs., Inc.*, No. C 08–2715 JF (HRL), 2010 WL 1929625, at *13 (N.D. Cal. May 12, 2010). However, the covenant does not "prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Carma*, 2 Cal.4th at 374, 6 Cal.Rptr.2d 467, 826 P.2d 710.

In the present case, the TPP is silent on the subject of balloon payments. Moreover, the TPP states that the final modified interest rate in any permanent loan modification may vary from that used in the TPP "due to a variety of factors." Spruill Decl., Ex. A. The TPP further notes that "[a]ny difference between the amount of the trial period payments and [Plaintiff's] regular mortgage payments will be added to the balance of [his] loan along with any other past due amounts as permitted by [his] loan documents. While this will increase the amount that [he] owe[s], it should not significantly change the amount of [his] modified mortgage payment as that is determined based on [his] total monthly gross income, not [his] balance." *Id*.

The extent of Defendant's discretion in determining the terms of the final modification is ambiguous from the TPP. It is clear that at some point, a lender may offer a loan modification that is not a "good-faith permanent modification." *See West*, 214 Cal.App.4th at 798, 154 Cal.Rptr.3d 285. Plaintiff has pled that the $83,000 balloon payment at the end of his loan term will cast him into foreclosure at that time, depriving him of the benefit of the contract. In the context of a motion to dismiss and on the present record, it is inappropriate for the Court to engage in a factual

1    inquiry into whether Defendant deprived Plaintiff the benefit of the TPP by including the balloon

2    payment term in the loan modification. Moreover, as noted above, what the parties intended by an

3    ambiguous contract is a factual determination. Accordingly, Defendant's Motion is denied as to

4    the breach of the covenant of good faith and fair dealing claim to the extent it is premised on a

5    breach of the TPP.

6                                        ii.       The Agreement

7            As discussed above, Plaintiff has not pled that the Agreement was an enforceable contract.

8    Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing is

9    dismissed to the extent that it relies on some contractual provision in the Agreement.

10                              e.       Breach of Oral/Implied Contract

11           In the briefing, both parties treat this cause of action as alleging a breach of the TPP. But

12   the first cause of action is for breach of a contract created by written and oral representations and

13   communications whereby Defendant represented that the terms of the Agreement would not

14   substantially differ from the terms of the TPP. FAC ¶ 30. To begin, the allegations concerning the

15   conduct giving rise to any oral or implied contract are vague. Moreover, as discussed above,

16   Plaintiff has not pled the formation of a distinct oral or implied contract. Accordingly, Plaintiff's

17   cause of action for breach of oral/implied contract is dismissed. However, Plaintiff will be given

18   leave to amend a breach of the TPP itself.

19           C.       Specific Performance

20           Plaintiff seeks "a judicial decree of specific performance commanding Chase "to perform

21   its obligations under the Agreement, namely to provide Plaintiff with a loan modification free

22   from the burden of a balloon payment . . . ." FAC ¶ 49. Specific performance is a remedy that may

23   be awarded where a breach of contract is established and certain other requirements are satisfied,

24   including inadequacy of a remedy at law. Defendant is correct that specific performance is a

25   remedy, rather than a stand-alone cause of action. *Inkster v. Fed. Home Loan Mortgage Corp.*, CV

26   F 12-1249 LJO MJS, 2012 WL 5933034, at *4 (E.D. Cal. Nov. 27, 2012) ("Specific performance

27   is a form of contractual relief, not an independent claim.") (quoting *Harara v. ConocoPhillips Co.*,

28   377 F.Supp.2d 779, 796, n.20 (N.D. Cal. 2005)). *See also Barroso v. Ocwen Loan Servicing, LLC*,

United States District Court
Northern District of California

22

208 Cal.App.4th 1001, 1007 n.2 146 Cal.Rptr.3d 90, 95 n.2 (2012) (specific performance "is derivative of the cause of action for breach of contract").

Nonetheless, courts regularly address specific performance claims on a motion to dismiss. *See, e.g.*, *Inkster*, 2012 WL 5933034, at *4 (dismissing claim for specific performance against lender). To the extent that Plaintiff alleges that he is entitled to specific performance based on a breach of the Agreement, this theory fails because Plaintiff has failed to allege that he accepted the Agreement. Thus, Plaintiff's request for specific performance is dismissed as to the Agreement. However, to the extent that Plaintiff alleges that he is entitled to specific performance based on a breach of the TPP's covenant of good faith and fair dealing, this theory is viable because he has stated a cause of action as to breach of the covenant.[2] The Court finds it unnecessary to dismiss the specific performance claim based on the alleged breach of the TPP's covenant of good faith and fair dealing at this time. *See Rampp v. Ocwen Fin. Corp.*, 11CV3017 BTM NLS, 2012 WL 2995066 (S.D. Cal. July 23, 2012) (on motion to dismiss, acknowledging that specific performance is remedy, rather than cause of action, but finding " it unnecessary to dismiss the specific performance claim on this technical ground").

**D.    Reformation**

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and fair value." Cal. Civ. Code § 3399. "'Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties . . . .'" *Jolley*, 213 Cal.App.4th at 908, 153 Cal.Rptr.3d 546 (quoting *American Home*

---

[2] Although Plaintiff's FAC refers to Chase's obligations "under the Agreement" rather than under the TPP, the balance of the FAC and the parties' briefs indicate an understanding that Plaintiff is seeking specific performance of the TPP. *See, e.g.*, FAC ¶ 47 ("Plaintiff has performed its obligations *under the TPP*") (emphasis added); Reply at 6 ("Chase appropriately offered Plaintiff a permanent loan modification, *as per the terms of the TPP*") (emphasis added). Note also that Plaintiff has not specifically alleged a breach of the TPP other than the TPP's covenant of good faith and fair dealing. Thus, the specific performance claim is also dismissed to the extent that it is based in any terms of the TPP other than the covenant of good faith and fair dealing.

United States District Court
Northern District of California

1    *Ins. Co. v. Travelers Indemnity Co.*, 122 Cal.App.3d 951, 963, 175 Cal.Rptr. 826 (1981)).

2        Plaintiff seeks reformation of the Agreement to exclude the balloon payment because its

3    inclusion is inconsistent with Defendant's representations as to the terms the Agreement would

4    contain. FAC ¶¶ 72–75. As discussed above, on the facts alleged, the Agreement was an offer of

5    for a permanent loan modification that Plaintiff did not accept. The Agreement is not a contract,

6    and therefore cannot be "amended." Plaintiff's reformation cause of action is dismissed with leave

7    to amend.

8        **E.    Declaratory Relief**

9        Plaintiff seeks a declaration concerning the agreed upon terms of the Agreement. FAC ¶¶

10   59, 62. Plaintiff does not allege that he agreed to the Agreement. His Opposition makes it clear

11   that he did not.

12       *Jolley*, on which Plaintiff relies, states: "To qualify for declaratory relief, [a party] would

13   have to demonstrate its action presented two essential elements: (1) a proper subject of declaratory

14   relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights

15   or obligations." *Jolley*, 213 Cal.App.4th at 909, 153 Cal.Rptr.3d 546 (internal quotations and

16   citation omitted) (declaratory relief cause of action brought pursuant to California Code of Civil

17   Procedure section 1060). But Plaintiff has not pled facts that would give rise to any party having

18   any rights or obligations pursuant to the Agreement, which was merely an offer that was rejected.

19   The declaratory relief cause of action is therefore dismissed with leave to amend.

20       **F.    Promissory Estoppel**

21           **1.    Background Law**

22       Where consideration is lacking, a contract may nonetheless be enforceable under the

23   doctrine of promissory estoppel. *See Raedeke*, 10 Cal.3d at 672–73, 111 Cal.Rptr. 693, 517 P.2d

24   1157 ("the doctrine of promissory estoppel is used to provide a substitute for the consideration

25   which ordinarily is required to create an enforceable promise"). A claim for promissory estoppel

26   requires that the following elements be established: "(1) a promise clear and unambiguous in its

27   terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both

28   reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his

United States District Court
Northern District of California

24

reliance." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976).

Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Id*. (citing *Youngman v. Nev. Irrigation Dist.*, 70 Cal.2d 240, 249, 74 Cal.Rptr. 398, 449 P.2d 462 (1969)). For example, in *Jolley*, the court held that there was a triable issue of fact as to whether defendant bank could be liable for frequently reassuring the plaintiff, who had borrowed money pursuant to a construction loan, that it would modify the loan where the plaintiff relied on those promises by borrowing money from friends and family to finish the construction, expecting to receive further disbursements from the bank. *See Jolley*, 213 Cal.App.4th at 895, 897, 153 Cal.Rptr.3d 546. In *West*, the court held that plaintiff's allegation that she relied on a bank's promise to provide a loan modification and not to go forward with foreclosure by failing to take legal action to stop the trustee's sale or to pursue other options to avoid foreclosure was sufficient to survive a demurrer. *West*, 214 Cal.App.4th at 804–05, 154 Cal.Rptr.3d 285.

On the other hand, this Court has previously held, along with other courts, that where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated. *See Lawther v. OneWest Bank, FSB*, No. C–10–00054 JCS, 2012 WL 298110, at *19 (N.D. Cal. Feb. 1, 2012); *see also Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, at *7 (S.D. Cal. Mar. 2, 2010) (concluding that making mortgage payments one is legally obligated to make is not detrimental; dismissing promissory estoppel claim due to failure to allege detrimental reliance where plaintiff forwent legal action in reliance on the bank's promise to delay sale of the home but plaintiff did not "allege facts that could establish that [p]laintiff would have been successful in delaying the foreclosure sale, renegotiating her loan, or retaining possession of her home").

### 2.   Application to Facts

Plaintiff alleges that Defendant's representatives promised that (1) the terms of the

1    Agreement would not substantially differ from the TPP; and (2) the Agreement would not contain

2    a balloon payment. FAC, ¶¶ 41–42. At a minimum, the second promise, as alleged, is clear and

3    unambiguous. *See* FAC ¶ 18 (when asked by Plaintiff whether the Agreement would contain a

4    balloon payment, "Chase responded in the negative."). Plaintiff relied on those promises "in

5    completing the TPP and making the required payments thereunder." *Id*. ¶ 42. The FAC does not

6    specifically allege that either promise was made before Plaintiff entered the TPP by making the

7    first payment, as opposed to before Plaintiff completed his performance under the TPP by making

8    the final payments. *See* FAC, ¶¶ 16–18. Moreover, Plaintiff has not alleged that he would have

9    taken any other course of conduct in the absence of Defendant's alleged promises.[3]

10   Assuming Plaintiff accepted the TPP, and performed under it, in reliance on Defendant's

11   promise that the Agreement would not contain a balloon payment, Plaintiff has not alleged how he

12   was harmed by his reliance. The Court notes that *West*, cited by Plaintiff, lists cases finding

13   detrimental reliance where plaintiffs alleged that they made TPP payments rather than pursue

14   other opportunities to cure the default, to prevent foreclosure, or even to go into default. *See West*,

15   214 Cal.App.4th at 804-05, 154 Cal.Rptr.3d 285. Plaintiff has made no comparable factual

16   allegations. Plaintiff must plead facts giving rise to the plausible inference that he was harmed by

17   entering the TPP. He has not done so.[4] Plaintiff's promissory estoppel cause of action is dismissed

18   with leave to amend.

19   ### G.    Intentional Misrepresentation/Concealment

20   This cause of action is one for fraud based on an intentional misrepresentation or

21   concealment. As discussed below, it is dismissed with leave to amend.

---

[3] At paragraph 69, in connection with his negligence cause of action, Plaintiff pleads that "without Chase's representations, Plaintiff would not have entered the TPP." This does not address what Plaintiff would have done. To the extent that Plaintiff is pleading that he would have done nothing and gone into default, Plaintiff has not pled that he would have been better off in that scenario.

[4] The Court notes that Plaintiff asserts, for the first time in Opposition, that he made the payments under the TPP and continued "to forebear other obligations." Opp'n at 6. Even if the Court could consider an assertion made for the first time in Opposition, this statement is conclusory. Plaintiff also argues in Opposition that he was harmed because the Agreement contained a balloon payment. This does not address why he was injured by accepting the TPP and making reduced mortgage payments thereunder as opposed to taking any other course of conduct.

United States District Court
Northern District of California

### 1.    Background Law

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal.App.4th 289, 294-95, 37 Cal.Rptr.3d 364 (2005) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996)). Fraud must be pled to the heightened Rule 9(b) pleading standard.

### 2.    Application to Facts

As with the promissory estoppel cause of action, Plaintiff relies on Defendant's alleged representations that (1) the terms of the Agreement would not substantially differ from the terms of the TPP; and (2) the Agreement would not contain a balloon payment. At the outset, the Court notes that the FAC does not allege when any conversation with Courtney Prince, Alicia, or Justin Healy took place, nor does it name any other representative of Defendant. More to the point, as with the promissory estoppel cause of action, Plaintiff has not alleged facts to support the assertion that he suffered any injury as a result of his reliance, that is, that accepting the TPP and making the reduced mortgage payments thereunder put him in a worse position than he would have been had he taken some other course of action. *See West*, 214 Cal.App.4th at 795, 154 Cal.Rptr.3d 285 (disregarding the plaintiff's allegation, in support of a fraud cause of action, that she suffered damages as a result of a bank's concealment of a foreclosure sale because she made mortgage payments she was already obligated to make, but finding sufficient to survive a demurrer the plaintiff's allegation that she failed to take legal action to stop the foreclosure sale in reliance of those misrepresentations).[5] This is true even assuming Plaintiff has sufficiently pled that he chose to enter the TPP and make reduced mortgage payments thereunder, as opposed to any other course of conduct, because of Defendant's alleged misrepresentations. Plaintiff's fraud claim is dismissed with leave to amend.

---

[5] In his Opposition, Plaintiff relies on his allegation that the balloon payment will cast him into foreclosure in 2034. Opp'n at 7. This does not provide factual support for the conclusion that Plaintiff was harmed by entering the TPP and making reduced mortgage payments thereunder as opposed to taking any other course of action.

United States District Court
Northern District of California

1    **H.     Negligence**

2        **1.     Legal Background**

3        To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of

4    care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.

5    *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500, 110 Cal.Rptr.2d 370, 28 P.3d 116 (2001). "The legal

6    duty of care may be of two general types: (a) the duty of a person to use ordinary care in activities

7    from which harm might reasonably be anticipated, or (b) an affirmative duty where the person

8    occupies a particular relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57

9    Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997). "The existence of a legal duty to use

10   reasonable care in a particular factual situation is a question of law for the court to decide."

11   *Vazquez v. Residential Invs., Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004). As a

12   general rule, under California law, "a financial institution owes no duty of care to a borrower when

13   the institution's involvement in the loan transaction does not exceed the scope of its conventional

14   role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089,

15   1095-1096, 283 Cal.Rptr. 53 (1991) (citation omitted).

16       In California, the test for determining whether a financial institution exceeded its role as

17   money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

18   factors, among which are (1) the extent to which the transaction was intended to affect the

19   plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered

20   injury, (4) the closeness of the connection between the defendant's conduct and the injury

21   suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing

22   future harm." *Id.* at 1098.

23       In the absence of controlling authority, several courts have concluded that, upon accepting

24   an application for a loan modification, a financial institution has exceeded its role as a money

25   lender and is subject to a standard of reasonable care in handling the application. *See Garcia*, 2010

26   WL 1881098, at \*3; *Trant v. Wells Fargo Bank, N.A.*, No. 12-cv-164-JM-WMC, 2012 WL

27   2871642, at \*6–\*7 (S.D. Cal. July 12, 2012); *Ansanelli*, 2011 WL 1134451, at \*7; *Avila v. Wells

28   Fargo Bank*, No. C 12–01237 WHA, 2012 WL 2953117, at \*12–\*14 (N.D. Cal. July 19, 2012);

United States District Court
Northern District of California

1    *Chancellor v. One West Bank*, No. C 12–01068 LB, 2012 WL 1868750, at *13–*14 (N.D. Cal.

2    May 22, 2012). *But see Roussel v. Wells Fargo Bank*, No. C 12–04057 CRB, 2013 WL 146370, at

3    *6 (N.D. Cal. Jan. 14, 2013) (Plaintiff did not state a claim for negligence where the underlying

4    claim was not that Defendant was sloppy in routing his application materials, but that Defendant

5    would have granted his application had it undertaken a legitimate review).

6         The rationale underlying these decisions is: (1) the loan modification review is intended to

7    affect the plaintiff's ability to stay in her home; (2) the result of mishandling the application is

8    foreseeable, the plaintiff will be denied the opportunity to keep her home regardless of whether the

9    modification would actually be granted; (3) the plaintiff will certainly be denied the opportunity to

10   keep her home; (4) the defendant's failure to process the application is closely connected to the

11   plaintiff's lost opportunity; and (5) recent statutory enactments demonstrate the public policy of

12   preventing future harm to loan borrowers. *See Garcia*, 2010 WL 1881098, at *3 (citing Cal. Civ.

13   Code § 2923.6 for California policy in favor of providing loan modifications); *see also Trant*,

14   2012 WL 2871642 at *7 (relying only on the first four considerations).

15        On the other hand, a number of decisions have decided, relying on *Nymark*, that a financial

16   institution does not owe a borrower a duty of care because the loan modification process is a

17   traditional money lending activity. *See Settle v. World Sav. Bank, F.S.B.*, No. ED CV 11–00800

18   MMM (DTBx), 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (compiling cases); *DeLeon v.*

19   *Wells Fargo Bank N.A.*, No. 10–CV–01390–LHK, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011);

20   *Ottolini v. Bank of America*, No. C–11–0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19,

21   2011) (finding that the six factors in *Nymark* weighed against finding a duty where (1) the extent

22   to which the transaction was intended to affect Plaintiff was remote as the loan modification

23   application, provided by Defendants and submitted by Plaintiff, was never acted on; (2) any harm

24   to Plaintiff was not particularly foreseeable because there was no indication that loan modification

25   would actually be approved; (3) the degree of certainty that Plaintiff suffered injury was likewise

26   minimal for the same reason; (4) the closeness of the connection between Defendants' conduct and

27   the injury suffered was remote absent a likelihood that the modification would have been

28   approved; (5) there was no allegation that Defendants willfully mishandled Plaintiff's application

United States District Court
Northern District of California

or engaged in any other conduct to which moral blame would attach; and (6) as a matter of policy, imposing negligence liability may dissuade lenders from ever offering modification); *Coppes v. Wachovia Mortg. Corp.*, No. 2:10–cv–01689–GEB–DAD, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011) (Plaintiff's contradictory allegations that Defendant denied a loan modification application and that Defendant granted a loan modification that caused Plaintiff injury did not establish a duty because they did not plausibly suggest that Defendant actively participated in the financed enterprise beyond the domain of the usual money lender).

A California Court of Appeal recently addressed the issue in the context of a construction mortgage, before the court on an appeal from summary judgment, and concluded that, on the facts of that case, the bank owed a duty of care to the borrower to consider his modification request in good faith. *Jolley*, 213 Cal.App.4th at 899, 153 Cal.Rptr. 546. The court further concluded that the bank breached that duty. *Id*. at 899–900. The court's holding was explicitly limited to the facts before it. *Id*. at 899 ("We begin by identifying specific conduct by Chase that Jolley claims was negligent so as to limit our analysis ' to the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case'").

The *Jolley* court addressed the six factors in order. First, the court held that the bank undertook a reassessment of the propriety of past loan disbursements, made by its predecessor in interest, for the borrower's benefit. *Id*. at 900. Second, because the borrower was missing payments there was foreseeable harm to his credit rating if the bank failed to negotiate in good faith. *Id*. It was also foreseeable that the borrower would suffer harm by sinking more of his own money into the construction project. *Id*. Third, the borrower was in fact injured because he invested more money in the construction project. *Id*. Fourth, the bank's upbeat representations concerning his prospects for a loan modification were almost certainly a primary factor in the borrower's continued investment. *Id*. Fifth, while acknowledging that it was impossible to tell how blameworthy the bank's conduct had been, the court noted that the borrower had no opportunity to protect his own interest, the bank benefitted by prolonging the construction project until the borrower completed construction, and there were facts to support the proposition that the bank engaged in now-illegal dual-tracking. *Id*. at 900–01. Sixth, that where there is a long running

United States District Court
Northern District of California

1    dispute regarding whether the predecessor in interest owed monies due under the loan, the policy

2    of preventing future harm weighs in favor of holding the bank to a duty of care to investigate the

3    loan and take the history into account in negotiating a modification. *Id*. at 901. The court noted

4    that in construction contracts there is an ongoing relationship between the bank and the borrower

5    throughout the construction period as disbursements are made depending on the project's progress.

6    *Id*. The court drew support for its conclusion from a variety of sources, including several federal

7    district court cases applying a duty of care in the residential mortgage context. *Id*. at 905-06 (citing

8    *Ansanelli*, 2011 WL 1134451, at *1, *7 (for the proposition that duty of care is properly pled

9    where bank offered a trial loan modification plan then reneged on its promise and reported the

10   loan as past due despite the fact that plaintiffs made proper payments under the trial modification,

11   thereby damaging their credit rating).

                              **2.       Application to Facts**

13        Plaintiff alleges that Defendant owed him a duty to disclose all material terms of the

14   Agreement when the parties entered into the TPP and breached that duty by concealing the balloon

15   payment due in 2034. FAC, ¶¶ 67–68. Plaintiff further alleges that he would not have entered the

16   TPP without Defendant's representations. *Id*. ¶ 69. Finally, Plaintiff alleges that he suffered

17   damage because he will likely be forced into foreclosure when the balloon payment comes due

18   pursuant to the Agreement. *Id*. ¶ 70.

19        First, Plaintiff nowhere alleges that he accepted the Agreement such that the

20   balloon payment will ever come due. Second, Plaintiff's theory here is ultimately the same as that

21   asserted in his claims for promissory estoppel or fraud: Defendant made misrepresentations that

22   caused Plaintiff to enter the TPP. Even assuming Plaintiff has adequately pled causation, his claim

23   is deficient for the same reason: he has not alleged any facts to support the assertion that he was

24   injured by entering the TPP and making reduced mortgage payments thereunder. The Court also

25   agrees with those cases holding that a financial institution does not owe a borrower a duty of care

26   in these circumstances because the loan modification process is a traditional money lending

27   activity. Thus, Defendant does not owe Plaintiff a duty of care in this case, because Defendant is

28   simply acting as a lender. Plaintiff's negligence claim is dismissed with leave to amend.

1

IV.     CONCLUSION

2          For the foregoing reasons, the Motion is DENIED as to the following claims: (1) breach of

3   the TPP's covenant of good faith and fair dealing; and (2) specific performance based in a breach

4   of the TPP's covenant of good faith and fair dealing. Further, the Motion is GRANTED and

5   Plaintiff is given leave to amend as to the following claims: (1) breach of oral contract/implied

6   contract; (2) breach of the Agreement's covenant of good faith and fair dealing; (3) promissory

7   estoppel; (4) specific performance based in a breach of (a) the TPP other than the TPP's covenant

8   of good faith and fair dealing, and (b) the Agreement, including its covenant of good faith and fair

9   dealing; (5) intentional misrepresentation/concealment; (6) declaratory relief; (7) negligence; and

10  (8) reformation. Plaintiff shall file any amended complaint within thirty days of this Order.

11         **IT IS SO ORDERED**.

12  Dated: January 28, 2014

13

14                                                              JOSEPH C. SPERO
                                                                United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California