UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAEMEON REIYDELLE,<br><br>    Plaintiff,<br><br>    v.<br><br>J.P. MORGAN CHASE BANK, N.A.,<br><br>    Defendant. | Case No.  12-cv-06543-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 57 |

## I.   INTRODUCTION

Plaintiff Daemeon Reiydelle ("Plaintiff"), as an individual and as executor of the Estate of Billie Reiydelle, brought this action against Defendant J.P. Morgan Chase, N.A. ("Defendant"). In his Second Amended Complaint ("SAC"), Plaintiff asserts six causes of action arising out of loan modification negotiations pertaining to a home mortgage. Presently before the Court is Defendant's Motion to Dismiss the SAC ("Motion"). The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). The Court finds that this Motion is suitable for decision without oral argument, and the hearing currently set for May 23, 2014 at 9:30 a.m. is VACATED. *See* Civ. L.R. 7-1(b). For the reasons set out below, the Court GRANTS IN PART AND DENIES IN PART the Motion. The SAC is DISMISSED with the exception of two claims: (1) breach of contract based in the trial period loan modification plan ("TPP"), and (2) breach of the implied covenant of good faith and fair dealing, also based in the TPP.

## II.   BACKGROUND

In 2004, Plaintiff obtained a loan to finance the purchase of residential property. SAC ¶ 8. In early 2011, Plaintiff was facing financial hardship because his ailing wife required constant medical care. *Id.* ¶ 9. Plaintiff contacted Defendant to discuss the possibility of refinancing the

loan or obtaining a hardship loan modification in April 2011. *Id.*

Throughout the summer of 2011, Plaintiff had numerous communications with Defendants' representatives regarding loan modification. *Id.* ¶ 10. Specifically, Plaintiff communicated with Courtney Prince, Justin Healy, and "Alicia." *Id.* As a result of these discussions, Defendant sent Plaintiff a TPP dated October 14, 2011 pursuant to the Home Affordable Modification Program ("HAMP"). *Id.* ¶ 14, Ex. A. The terms of the TPP required Plaintiff to make three consecutive monthly payments of $3,157.21 each, beginning in December 2011. *Id.* ¶ 15.

The parties agree that the TPP constituted an enforceable contract, but they dispute the date into which it was entered. Plaintiff asserts that the October 14, 2011 TPP sent to Plaintiff memorialized the parties' agreement. *See id.* ¶ 14. Defendant asserts that the October 14, 2011 TPP was merely an offer, and Plaintiff did not accept it until he made his first payment on December 1, 2011. *See* Reply at 3 (citing SAC, Ex. A at 1) ("To accept this offer, you must make your first monthly 'trial period payment' in place of your normal monthly mortgage payment.").

Communications with Defendant's representatives regarding a permanent loan modification and the TPP continued "during the pendency of the TPP, up to and through February 14, 2012." SAC ¶ 16. During these communications, Defendant's representatives, including Courtney Prince, "Alicia," and Justin Healy, (1) "represented that the TPP was calculated uniquely for Plaintiff," (2) "repeatedly assured Plaintiff that the terms of the anticipated final loan modification might vary slightly from the TPP, but not significantly because the TPP was already calculated to take into consideration the maximum amount Plaintiff had the ability to pay based on his then-existing financial circumstances," and (3) "[a]t some point between October 2011 and February 14, 2012, during one specific communication with . . . Justin Healy, Plaintiff asked whether the anticipated final loan modification would contain a balloon payment" and "Chase responded in the negative." *Id.* ¶¶ 17–19. Plaintiff was never notified that there would be, or could be, a balloon payment included in his loan modification. *Id.* ¶ 20.

Plaintiff made all payments in compliance with the TPP. *Id.* ¶ 20, Ex. B. Accordingly, Defendant sent Plaintiff a documented entitled "Home Affordable Loan Modification Agreement"

2

("Agreement") setting forth the terms of the final loan modification. *Id.* ¶ 22, Ex. C. The Agreement included a balloon payment of approximately $83,000 due at the end of the modified loan term, December 1, 2034. *Id.* ¶ 24. Plaintiff alleges that this was a substantial departure from the promised loan modification that materially altered its terms. *Id.* Plaintiff, who is 61 years old, believes that the final balloon payment will force him into foreclosure. *See id.* ¶ 28. Plaintiff did not accept the Agreement, but he attempted to continue to make payments pursuant to the TPP, which Defendant refused to accept. *See id.* ¶ 27. Plaintiff believes that he is left with the unconscionable choice between opting for foreclosure now, or when he is 83 years old in 2034.[1] *Id.* ¶¶ 28–30.

Based on the above, Plaintiff brought this suit against Defendant. The Court previously denied Defendant's motion to dismiss the First Amended Complaint on the claim for breach of the covenant of good faith and fair dealing implied in the TPP, but granted the motion with leave to amend the other claims. *See Reiydelle v. J.P. Morgan Chase Bank, N.A.*, 12-CV-06543-JCS, 2014 WL 312348 (N.D. Cal. Jan. 28, 2014). Plaintiff subsequently filed the SAC, which alleges six causes of action: (1) breach of the TPP, (2) breach of the covenant of good faith and fair dealing implied in the TPP, (3) promissory estoppel, (4) intentional misrepresentation or concealment, (5) declaratory relief, and (6) negligence. Defendant moves to dismiss all claims except for the claim for breach of the covenant of good faith and fair dealing.

### III. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a

---

[1] In his SAC, Plaintiff also alleges that "the Agreement did not comply with the requirements of California Business and Professions Code section 10241.1 and Civil Code section 2966 concerning the presentation, format, and disclosure of the balloon payment." SAC ¶ 26. Plaintiff has not supplemented this additional allegation with any elaboration, and he does not appear to assert it as a separate cause of action or seek any relief thereunder. *See id.* Accordingly, the Court does not consider this additional allegation to be a separate cause of action.

plaintiff's burden at the pleading stage is relatively light. Rule 8(a) states that "[a] pleading which sets forth a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 545 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

A court may deny leave to amend where amendment would be futile or if the claim is legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## IV. DISCUSSION

### A. Breach of Contract

The Court dismissed the FAC's breach of contract claim, which was based in a breach of an oral or implied contract, and gave Plaintiff leave to amend to allege a breach of the TPP. *See Reiydelle*, 2014 WL 312348, at *8, *14. Plaintiff has abandoned his claim for breach of an oral or

4

implied contract, and he now alleges a breach of the TPP itself. *See* SAC ¶¶ 32–36; Opp'n at 4.

Defendant moves to dismiss this claim based on three arguments: (1) there was no breach because Defendant offered Plaintiff a permanent modification, (2) the TPP was not modified by oral representations, and (3) Plaintiff has not alleged damages adequately. *See* Mot. at 2–5. The Court disagrees. The SAC states a claim for breach of contract.

The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745, (2001). A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Barrous v. BP P.L.C.*, No. 10-CV-2944-LHK, 2010 WL 4024774, at * 4 (N.D. Cal. Oct. 13, 2010). By contrast, what the parties intended by an ambiguous contract is a factual determination. *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854 (1993)). "Where the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco*, 554 F. Supp. 2d at 1040 (quoting *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)). When interpreting a contract, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

As to the existence of a contract, the parties do not dispute that the TPP constitutes a contract. *See, e.g.*, Mot. at 2. Moreover, the Court has previously concluded that the TPP is an enforceable contract. *See Reiydelle*, 2014 WL 312348, at *10–*12.

As to performance, Plaintiff adequately alleges that he fully performed by making three payments to Defendant in accordance with the terms of the TPP. *See* SAC ¶ 34.

As to breach, Plaintiff alleges that Defendant breached the terms of the TPP "by including a balloon payment in the Agreement, the existence of which materially and substantially differs from the terms of the TPP and significantly changes the amount of Plaintiff's modified mortgage

5

payment." SAC ¶ 35. The Court finds that TPP, which is attached to the SAC and incorporated therein, is ambiguous as to the parties' intent regarding a balloon payment. *See id.* Ex. A. This conclusion is consistent with the Court's previous observation that the TPP is ambiguous as to "[t]he extent of Defendant's discretion in determining the terms of the final modification" and that it was "inappropriate for the Court to engage in a factual inquiry into whether Defendant deprived Plaintiff the benefit of the TPP by including the balloon payment term in the loan modification." *See Reiydelle*, 2014 WL 312348, at *13.

Reviewing the TPP as a whole, the Court finds that the parties' intent as to a balloon payment is ambiguous because, although it is clear that the loan balance will increase, there is no explanation as to how such an increase will be reflected in the permanent modification. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together . . . ."); *Monaco*, 554 F. Supp. 2d at 1040 (motion to dismiss must be denied where contract provision "is capable of two or more reasonable interpretations"). For example, two of the Frequently Asked Questions provide:

> **Q. When will I know if my loan can be modified permanently and how will the modified loan balance be determined?**
>
> Once we confirm you are still eligible for a Home Affordable Modification and you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. *While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment as that is determined based on your total monthly gross income, not your loan balance.*
>
> [. . .]
>
> **Q. Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**
>
> *Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage* <u>unless</u> *your initial modified interest rate is below current market interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey® Rate for 30-year, fixed-rate conforming mortgages). Once your interest rate reaches the cap it*

> will be fixed for the remaining life of your loan. Your new monthly payment will also include an escrow for property taxes, hazard insurance, and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment, or other escrowed expenses increases, your monthly payment will increase as well.

*Id.* (italics emphasis added). Arguably, these provisions inform Plaintiff that his loan balance would increase by a fixed amount "for the life of [the] mortgage" once the loan was permanently modified, and that such an increase could be reflected in any number of ways, including a balloon payment. On the other hand, it is also arguable that these provisions inform Plaintiff that his monthly payments under a permanent modification would be tailored to what he can afford; any additional principal amount would be paid through additional monthly payments that extend the life of the mortgage. Because there is doubt about the parties' intent as to a balloon payment, it is not appropriate for the Court to make a factual determination as to the TPP's interpretation. *See Monaco*, 554 F. Supp. at 1040; *Plummer*, 941 F.2d at 803.

Defendant argues that Plaintiff's breach of contract claim depends on oral representations made after the TPP was entered into in December 2011, and that such oral representations did not legally modify the TPP. *See* Mot. at 3–4. Plaintiff argues that he is not actually alleging any oral modifications of the TPP, but rather he is alleging that "communications between Plaintiff and Defendant between October 2011 and February 2012 represent extrinsic evidence of the terms and scope of the TPP." *See* Opp'n at 4. He also asserts that the parties entered into the TPP in October 2011. *See id.* at 3–4.

The Court has previously concluded that the parties entered into the TPP when Plaintiff tendered his first payment in December 2011. *See Reiydelle*, 2014 WL 312348, at *11. *See also* SAC Ex. A at 1 ("To accept this offer, you must make your first monthly 'trial period payment . . . .'"), 4 ("The terms of your trial period plan below are effective on the day you make your first trial period payment . . . ."). Because the Court has also determined that "in the light of all the circumstances," the TPP "is fairly susceptible of either one of the two interpretations contended for[]" regarding a balloon payment, "extrinsic evidence relevant to prove either of such meanings is admissible.'" *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012) (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006)) (some

1  citations omitted). Thus, the circumstances surrounding the parties' entering into the agreement—
2  such as evidence of conversations leading up to December 2011 when Plaintiff made his first
3  payment and entered into the TPP—may be admitted during a summary judgment proceeding or
4  trial. *See Skilstaf*, 669 F.3d at 1015. However, the Court need not address these evidentiary issues
5  on the instant Motion because the Court has already determined—without the use of extrinsic
6  evidence—that Plaintiff has stated a claim for breach of the terms of the TPP. *Accord id.* at 1017–
7  18 (court's determination of whether contract is ambiguous in light of extrinsic evidence can be
8  made at time of summary judgment or motion to dismiss).[2]

9  The parties also dispute the effect of four federal and state cases, which generally support
10 the proposition that a TPP entered into pursuant to HAMP may create an enforceable contract for
11 an offer of a loan modification. *See Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir.
12 2013), *as amended on reh'g in part* (Sept. 23, 2013); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283
13 F.R.D. 533 (N.D. Cal. 2012); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012);
14 *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780 (2013). Defendant is correct that the
15 cases do not stand for the proposition that the lender's offer must be "identical" to the TPP or that
16 it must be acceptable to the borrower. *See* Mot. at 2. However, to the extent that Defendant argues
17 that the only action it needed to take to comply with the TPP was to offer *any* loan modification
18 with whatever terms it chose, it is incorrect. *See id.* at 3. In the context of Plaintiff's claim for a
19 breach of the covenant of good faith and fair dealing, the Court explained that "[i]t is clear that at
20 some point, a lender may offer a loan modification that is not a 'good-faith permanent
21 modification.'" *See Reiydelle*, 2014 WL 312348, at *13. Similarly, because the express terms of

---

[2] The Court recognizes that Plaintiff states that it is not alleging any oral modifications to the TPP after it was entered into in December 2011. *See* Opp'n at 4. Nonetheless, for the sake of clarity, the Court notes that Defendant is correct that to the extent that any oral representations made after Plaintiff accepted the TPP are alleged as modifications to the TPP, such assertions must be rejected for lack of consideration. *See Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 WL 1134451, at *4  (N.D. Cal. Mar. 28, 2011)) (finding sufficient consideration to support oral TPP where "plaintiffs expended time and energy and made financial disclosures in furtherance of the agreement, which they would not have been required to do under the original contract").

the TPP, when read as a whole, are ambiguous as to whether the offer of a loan modification would include a balloon payment, it is a factual inquiry as to whether the loan modification that was offered to Plaintiff was consistent with the TPP.

As to damages, Plaintiff alleges that the balloon payment will cast him into foreclosure when it becomes due, depriving him of the benefit of the contract. *See* SAC ¶¶ 29, 36. The Court previously noted that this could support an adequate allegation of damages in the context of the claim for a breach of the implied covenant of good faith and fair dealing. *See Reiydelle*, 2014 WL 312348, at \*13. In his SAC, Plaintiff also alleges additional damages, including "compensatory damages in the form of depriving Plaintiff of participation in the 'pay-for-success incentive' under the TPP, higher interest rates on any subsequent modifications or transactions involving the Loan, and subjecting the Loan to continued accrual of late fee [sic], accrued interest, foreclosure fees, corporate advances, and deterioration of his credit rating." *See* SAC ¶ 36.

Defendant argues that the SAC's allegations of damages are "entirely speculative and have little or no basis in fact." *See* Mot. at 4–5 (citing Cal. Civ. Code § 3000). While a complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" it need only include enough facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Twombly*, 550 U.S. at 555. In light of this standard, Plaintiff's allegations of damages are sufficient, even if they are not a model of clarity or detail. *See, e.g.*, *Sutcliffe*, 283 F.R.D. at 553 (citing *Wigod*, 673 F.3d at 575) (noting that for breach of contract claim based on contract to offer permanent loan modification, pecuniary loss can be alleged with "incurred costs and fees, lost other opportunities to save her home . . . [and] a negative impact to [plaintiff's] credit").

Defendant also argues that the Court has already rejected Plaintiff's allegation of damages based on his allegation that the balloon payment will cast him into foreclosure in 2034. *See* Mot. at 5 (citing *Reiydelle*, 2014 WL 312348, at \*17 n.5). However, Defendant misunderstands the Court's footnote. While such a bare allegation is insufficient for alleging that Plaintiff was damaged by *entering into* the TPP, it supports a plausible allegation that Plaintiff was *deprived of the benefit* of the TPP.

9

Accordingly, as to the first cause of action for breach of contract, the Motion is DENIED.

**B.     Promissory Estoppel**

The Court dismissed the FAC's promissory estoppel claim based on oral promises by Defendant's representatives that (1) the terms of the Agreement would not substantially differ from the TPP, and (2) the Agreement would not contain a balloon payment. *See Reiydelle*, 2014 WL 312348, at *16. Plaintiff alleges that such representations induced him into entering into the TPP. *See* SAC ¶ 44. In dismissing the claim in the FAC, the Court noted that Plaintiff had not "specifically allege[d] that either promise was made before Plaintiff entered the TPP by making the first payment, as opposed to before Plaintiff completed his performance under the TPP by making the final payments." *See id.* (citing FAC, ¶¶ 16–18). The Court further noted that Plaintiff failed to allege that he detrimentally relied on Defendant's promises by accepting the TPP. *See Reiydelle*, 2014 WL 312348, at *16. The Court specifically advised Plaintiff that he "must plead facts giving rise to the plausible inference that he was harmed by entering the TPP." *Id.* In the SAC, Plaintiff now alleges that these conversations took place between October 2011 and December 2011. *See* SAC ¶ 42.

Defendant moves to dismiss this claim based on two arguments: (1) Plaintiff does not allege a clear and unambiguous promise, and (2) Plaintiff fails to allege facts that establish reasonable and foreseeable reliance. *See* Mot. at 6–8. The Court agrees that Plaintiff has not alleged plausibly the existence of a clear and unambiguous promise.

A claim for promissory estoppel requires that the following elements be established: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Ass'n,* 60 Cal. App. 3d 885, 890 (1976).

As to a clear and unambiguous promise, the Court has already held that the substance of the second alleged promise—*i.e.*, the Agreement would not contain a balloon payment—was clear and unambiguous. *See Reiydelle*, 2014 WL 312348, at *16. However, Plaintiff's claim still fails. While he now alleges that the conversations took place between October and December 2011 and

1   he reiterates that certain Defendant's representatives were involved, it is still impossible to
2   determine who made what promises and when such promises were made. *See* SAC ¶¶ 10, 16–18,
3   42, 43.³ *See, e.g.*, *Rockridge Trust v. Wells Fargo NA*, 13-CV-01457-JCS, 2014 WL 688124, at
4   *15 (N.D. Cal. Feb. 19, 2014) (dismissing claim for promissory estoppel where plaintiffs alleged
5   that unidentified representatives of defendant bank repeatedly made promises "[b]etween February
6   and November of 2009," and it was "impossible to determine which particular conversations
7   [we]re alleged to have given rise to Plaintiffs' reliance"). *Cf. West*, 214 Cal. App. 4th at 804
8   (finding allegations sufficient to survive demurrer where, *inter alia*, plaintiff alleged that on
9   particular day, defendant bank's representative promised plaintiff that she could resubmit updated
10  financial data for reevaluation of a loan modification, and that no foreclosure sale was scheduled).

11  Plaintiffs' amended allegations are still insufficient. For example, Plaintiff alleges that
12  "[a]t some point between October 2011 and February 14, 2012, during one specific
13  communication with, upon information and belief, [Defendant's] representative Justin Healy,
14  Plaintiff asked whether the anticipated final loan modification would contain a balloon payment.
15  Chase responded in the negative." *See* SAC ¶ 19. Although Plaintiff attempts to identify a
16  particular conversation, he still does not identify when the conversation took place within the five-
17  month range, leaving open the possibility that such a representation was made *after* Plaintiff had
18  already entered into the TPP, thus obviating any claim that Plaintiff was tricked into entering into
19  the TPP. *See* Mot. at 7. Further, Plaintiff's allegation that he "believes that each of these
20  communications was memorialized by each of the [Defendant's] representatives in a detailed
21  system of loan servicing notes and comments" does not alleviate Plaintiff of his burden to plead
22  facts that are definite enough to "raise a right to relief above the speculative level." *See* SAC ¶ 13;
23  *Twombly*, 550 U.S. at 555. Although Plaintiffs' opposition addresses several issues pertaining to
24  the promissory estoppel claim, he does not address the Court's concern that it is impossible to
25  determine who made which representations, when they were made, or their contents. *See* Opp'n at

---

³ The SAC contains duplicate paragraphs 42 and 43. The citation here refers to the first-appearing paragraph 43 and the second-appearing paragraph 42.

11

7.

Plaintiff has had opportunities to amend this claim, and the Court finds that further amendment would be futile. Accordingly, as to the third cause of action for promissory estoppel, the Motion is GRANTED and this claim is DISMISSED WITH PREJUDICE.

### C. Intentional Misrepresentation or Concealment

The Court dismissed the FAC's intentional misrepresentation or concealment claim based on the same oral promises alleged in the promissory estoppel claim: (1) the terms of the Agreement would not substantially differ from the TPP, and (2) the Agreement would not contain a balloon payment. *See Reiydelle*, 2014 WL 312348, at *17. In dismissing the claim, the Court noted that "the FAC does not allege when any conversation with Courtney Prince, Alicia, or Justin Healy took place, nor does it name any other representative of Defendant." *See id.* The Court further noted that Plaintiff failed to allege that "accepting the TPP and making the reduced mortgage payments thereunder put him in a worse position than he would have been had he taken some other course of action." *See id.* In the SAC, Plaintiff now alleges the same damages alleged in the SAC's breach of contract claim, and he also alleges that Defendant acted with "oppression, fraud, and malice" such that punitive damages should be awarded. *See* SAC ¶ 57 (citing Cal. Civ. Code § 3294).

Defendant moves to dismiss this claim based on two arguments: (1) Plaintiff does not plead facts with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, and (2) Plaintiff fails to allege reasonable reliance. *See* Mot. at 8–9. The Court agrees that the SAC does not meet the Rule 9(b) standard.

A claim for intentional misrepresentation or concealment is grounded in a claim for fraud. *See id.* at *16. "The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294–95 (2005) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). When pleading fraud in federal courts, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

12

Although Plaintiff has amended his damages claim, he does nothing to cure the other defect identified by the Court. That is, it is still impossible to determine when the alleged representations were made or who made them. And, again, Plaintiff does not specifically or plausibly allege that any misrepresentations were made before Plaintiff entered into the TPP; without such allegations, causation is lacking. *See* Mot. at 7. In his opposition, Plaintiff characterizes the "when" as a "narrow window of time between October 2011 and February 2012." *See* Opp'n at 8. But the Court has previously found that such generalized allegations are insufficient to meet the Rule 12(b)(6) standard, and they are certainly insufficient to meet the heightened Rule 9(b) standard. *See, e.g.*, *Rockridge Trust*, 2014 WL 688124, at *17 (dismissing fraud claim based on alleged repeated representations made between February and November 2009). Because Plaintiff has not stated a claim for intentional misrepresentation or concealment, Plaintiff's claim for punitive damages under section 3294 of the California Civil Code is also dismissed. *See* SAC ¶ 57.

Plaintiff has had opportunities to amend this claim, and the Court finds that further amendment would be futile. Accordingly, as to the fourth cause of action for intentional misrepresentation or concealment, the Motion is GRANTED and this claim is DISMISSED WITH PREJUDICE.

**D.  Declaratory Relief**

The Court dismissed the FAC's declaratory relief claim seeking a declaration regarding the Agreement because it was clear that the parties never entered into the Agreement. *See Reiydelle*, 2014 WL 312348, at *15. Plaintiff has abandoned his claim for declaratory relief based on the Agreement, and he now seeks a declaration regarding the TPP. *See* SAC ¶¶ 58–62.

Defendant moves to dismiss this claim based on three arguments: (1) declaratory relief is inappropriate because neither party has any rights or obligations under the Agreement, (2) declaratory relief is inappropriate because Defendant did not breach the TPP and, in any event, that agreement has already concluded, and (3) declaratory relief is inappropriate because it is redundant of Plaintiff's other claims. *See* Mot. at 10. The Court agrees that the claim for declaratory relief is inappropriate here because it is redundant of Plaintiff's surviving claims.

13

Section 1060 of the California Code of Civil Procedure provides for actions seeking declaratory relief under a "written instrument" or "contract." *See Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (2013). Declaratory relief "serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs. In short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." *Id.* at 909. "To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'" *Id.* (quoting *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011)). A court "has discretion not to issue declaratory relief when 'its declaration or determination is not necessary or proper at the time under all the circumstances.'" *See Kassahun v. JPMorgan Chase Nat. Corporate Servs., Inc.*, SACV 11-1956 DOC, 2012 WL 1378659, at *3 (C.D. Cal. Apr. 19, 2012) (quoting Cal. Code Civ. Proc. § 1601). Specifically, "where there is an accrued cause of action for a past breach of contract or other wrong, or where an adequate remedy exists at law, declaratory relief is inappropriate." *Curley v. Wells Fargo & Co.*, 13-CV-03805 NC, 2014 WL 988618, at *9 (N.D. Cal. Mar. 10, 2014) (quoting *Sanchez v. MortgageIt, Inc.,* No. 10-cv-04146 PJH, 2011 WL 588178, at *3 (N.D. Cal. Feb. 10, 2011)) (some citations omitted).

The Court finds that a separate cause of action for declaratory relief is unwarranted here. Even assuming that Plaintiff is correct that remedies other than money damages could be considered, Plaintiff does not allege that the other two claims that survive the Rule 12(b)(6) stage—*i.e.*, breach of contract and breach of the implied covenant of good faith and fair dealing—could not provide sufficient relief if Plaintiff prevails. *See* Opp'n at 9–10. *See, e.g.*, *Curley*, 2014 WL 988618, at *9 (granting defendant bank's motion for summary judgment on declaratory judgment claim where, *inter alia*, plaintiff had stated claim for breach of the implied covenant of good faith and fair dealing).

The Court finds that the redundancy of Plaintiff's claim for declaratory relief and the fact that his claims that have survived dismissal cannot be cured by amendment. Accordingly, as to the fifth cause of action for declaratory relief, the Motion is GRANTED and this claim is

DISMISSED WITH PREJUDICE.

### E.   Negligence

The Court dismissed the FAC's negligence claim based on essentially the same oral promises alleged in the promissory estoppel and intentional misrepresentation or concealment claims, *i.e.*, Defendant's representatives made misrepresentations that induced Plaintiff to enter into the TPP. *See Reiydelle*, 2014 WL 312348, at *19. In dismissing the claim, the Court noted that "[e]ven assuming Plaintiff has adequately pled causation, his claim is deficient for the same reason: he has not alleged any facts to support the assertion that he was injured by entering the TPP . . . ." *Id.* The Court also held that it "agrees with those cases holding that a financial institution does not owe a borrower a duty of care in these circumstances because the loan modification process is a traditional money lending activity" and, as a result, "Defendant does not owe Plaintiff a duty of care in this case, because Defendant is simply acting as a lender." *See id.*

Defendant moves to dismiss this claim based on three arguments: (1) Defendant owes no duty to Plaintiff, (2) even if there were a duty, Plaintiff's theory of breach fails, and (3) Plaintiff has not adequately alleged damages. *See* Mot. at 11–12. The Court agrees that Defendant owes no duty to Plaintiff in this case.

To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–1096 (1991) (citation omitted). Courts in this district have come to different conclusions about whether a financial institution owes a duty of care during the loan modification process. *See Reiydelle*, 2014 WL 312348, at *19 (collecting cases). This Court has previously concluded that financial institutions generally do not owe borrowers a duty of care during the loan modification process because the process is a traditional money lending activity. *See id.*

Plaintiff argues that Defendant does owe him a duty of care. *See* Opp'n at 10–12.

However, Plaintiff has not pled any new facts to show that Defendant was acting as anything other than a lender. *See generally* SAC ¶¶ 63–69. The Court adheres to its previous conclusion that Defendant does not owe Plaintiff a duty of care in this case. *See Reiydelle*, 2014 WL 312348, at *19 ("Defendant does not owe Plaintiff a duty of care in this case, because Defendant is simply acting as a lender.").

Plaintiff also cites to *Rowland v. JPMorgan Chase Bank, N.A.*, C 14-00036 LB, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014). *See* Opp'n at 12. The Court agrees with Defendant that the case is distinguishable on the facts. *See* Reply at 9–10. In *Rowland*, the court concluded that in light of the extensive facts where the bank "offered the [borrowers] a loan modification, admitted its repeated errors, and transferred the servicing rights shortly thereafter, public policy supports the existence of a duty." *Id.* at *11. Additionally, the court in *Rowland* noted that the plaintiffs' allegations were "stronger than those in many of the cases finding a duty of care because (at least as alleged) [the defendant bank] did not just mishandle a loan modification application. Instead, it mishandled an approved loan modification agreement that [defendant's] representatives repeatedly stated was 'complete' and 'in place.'" *Rowland*, 2014 WL 992005, at *9. Here, Plaintiff has not alleged comparable extenuating circumstances.

Plaintiff has had opportunities to amend this claim, and the Court finds that further amendment would be futile. Accordingly, as to the sixth cause of action for negligence, the Motion is GRANTED and this claim is DISMISSED WITH PREJUDICE.

///
///
///
///
///
///
///
///
///

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED as to the claims for promissory estoppel, intentional misrepresentation or concealment, declaratory relief, and negligence; and the Motion is DENIED as to the claim for a breach of the TPP. The SAC is DISMISSED WITH PREJUDICE as to all claims except for a breach of the TPP, and a breach of the covenant of good faith and fair dealing implied in the TPP.

**IT IS SO ORDERED.**

Dated: May 20, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge